IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MARIO R. RIVERA,**

        **Plaintiff,**

v.                                                  No. CIV-15-0779 RB/LAM

**CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,**

        **Defendant.**

# **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]**

**THIS MATTER** is before the Court on *Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (*Doc. 16*) filed April 19, 2016.  On July 20, 2016, Defendant filed a response to the motion (*Doc. 20)* and, on August 3, 2016, Plaintiff filed a reply (*Doc. 22*).  On January 20, 2016, United States District Judge Robert C. Brack issued an order referring this case to the undersigned to hold hearings, perform legal analysis, and prepare proposed findings and a recommended disposition, if necessary.  [*Doc. 9*].  The Court has reviewed the motion, response, reply, and relevant law.  Additionally, the Court has meticulously reviewed and considered the entire administrative record.  [*Doc. 13*].  For the reasons set forth

---

[1] Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.

below, the Court recommends that *Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (*Doc. 16*) be **GRANTED** and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **REMANDED**.

## I.   Procedural History

On July 16, 2009, Plaintiff filed applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI") (*Doc. 13-9* at 2-3 and 6-12, respectively), alleging that he became disabled on July 10, 2009.  Plaintiff stated that he was disabled by depression, anxiety, anger problems, shoulder impingement syndrome, learning disability, behavior disorder, speech impairment, and possible undiagnosed panic disorder. [*Doc. 13-10* at 16].  The applications were denied at the initial level on November 13, 2009 (*Doc. 13-5* at 2-3), and at the reconsideration level on August 26, 2010 (*id.* at 4-5).   Pursuant to Plaintiff's request (*Doc. 13-6* at 24-25), Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a hearing on April 10, 2012 (*Doc. 13-4* at 2-29) (hereinafter the "2012 Hearing").  At the 2012 Hearing, Plaintiff appeared, represented by attorney Michael D. Armstrong, and testified. *Id.* at 7-25.   Vocational expert Pamela A. Bowman (hereinafter "VE Bowman") also testified at the 2012 Hearing.   *Id*. at 25-28.   On April 18, 2012, the ALJ issued her decision (hereinafter the "2012 Decision"), finding that under the relevant sections of the Social Security Act Plaintiff was not disabled.  [*Doc. 13-5* at 9-20].   On May 1, 2012, Plaintiff requested that the Appeals Council

review the ALJ's decision. [*Doc. 13-11* at 45].[2] On July 16, 2013, the Appeals Council issued an order remanding the case to the ALJ for additional proceedings. [*Doc. 13-5* at 26-29].

Following the remand, the ALJ held another hearing on February 20, 2014 (hereinafter the "2014 Hearing"). [*Doc. 13-4* at 30-62]. Plaintiff appeared, again represented by his counsel, and testified. *Id*. at 36-54. Vocational expert Thomas A. Greiner[3] (hereinafter "VE Greiner") testified at the 2014 Hearing. *Id*. at 54-61. On March 24, 2014, the ALJ issued a new decision (hereinafter the "2014 Decision"), again finding that under the relevant sections of the Social Security Act Plaintiff was not disabled. [*Doc. 13-3* at 21-36]. Also on March 24, 2014, Plaintiff requested that the Appeals Council review the ALJ's 2014 Decision. *Id*. at 17. On June 30, 2015, the Appeals Council denied Plaintiff's request for review, on the ground that it had "found no reason under our rules to review the [ALJ]'s decision. *Id*. at 3. This was the final decision of the Commissioner. On September 2, 2015, Plaintiff filed his complaint in this case. [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial

---

[2] The cited document is a letter from Plaintiff's counsel to the Appeals Council, dated June 18, 2013, which indicates that an appeal request was made on that date. The actual request for Appeals Council review of the ALJ's 2012 Decision does not appear to be in the administrative record.

[3] In the 2014 Hearing transcript, VE Greiner is referred to as "Mr. Griner (phonetic)." [*Doc. 13-4* at 30]. However, the VE's resume identifies him as "Thomas A. Greiner." [*Doc. 13-7* at 33].

3

evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) and 416.905(a).  In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.  20 C.F.R SS 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that:  (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."  20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on August 15, 1980, and was therefore 28 years old on the alleged disability date of July 10, 2009.  [*Doc 13-9* at 2].   Plaintiff did not graduate from high school, but did subsequently obtain a GED.   [*Doc. 13-4* at 21].   While in school, he was in special education and behavior disorder classes.   *Id*.   Plaintiff speaks, reads, and understands English.   [*Doc. 13-10* at 15].   He has previously worked as a fast food cook, a pizza-dough maker, a construction framer, and a waiter.   *Id*. at 17.   Plaintiff alleges that he is unable to work because of foot pain, shoulder pain, PTSD, learning disabilities, and anti-social personality disorder.   [*Doc. 16* at 1].   Plaintiff's medical records include:   treatment records for the period from February 22, 2008 to April 7, 2009 (*Doc. 13-13* at 2-27), for the period from April 7, 2009 to January 30, 2010 (*Doc. 13-16* at 3 through *Doc. 13-18* at 4), and for the period from January 30, 2010 through January 25, 2012 (*Doc. 13-20* at 3 through *Doc. 13-21* at 46) from Presbyterian Hospital and Presbyterian Family Practice; treatment records dated June 30, 2009 from University of New Mexico Hospitals (*Doc. 13-14* at 2-19); treatment records for the period from April 14, 2009 to July 23, 2009 (*id*. at 22-45) and for the period from December 11, 2009 to February 9, 2010 (*Doc. 13-18* at 5-11) from Hands on Health Care, PC; consultative mental examination report dated July 23, 2010 from Barbara A. May-Valencia, Ph.D., State of New Mexico Disability Determination Services (DDS) (*id*. at 14-22); disability determination examination report dated July 31, 2010 from Harry Burger, D.O., New Mexico DDS (*id*. at 24-29); physical RFC assessment dated August 17, 2010 from Michael Finnegan, M.D., (*id*. at 31-38); mental RFC

6

assessment (*id*. at 39-41) and psychiatric review technique (*id*. at 43-56), both dated August 26, 2010, from Charles Mellon, M.D.; and treatment records for the period from February 23, 2012 to May 6, 2013 from Zia Integrative Medicine (*Doc. 13-21* at 57 66). Where relevant, Plaintiff's medical records are discussed in more detail below.

### The ALJ's 2014 Decision[4]

At step one of the five-step evaluation process the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 10, 2009, the alleged onset date. [*Doc. 13-3* at 23]. At step two, the ALJ found that Plaintiff has the following severe impairments: "a mental impairment variously diagnosed to include major depressive disorder, PTSD with paranoid ideation, a learning disorder, an anti-social personality disorder, and an impulse control disorder; left foot degenerative changes status post-surgery, and right shoulder tendinosis[5] and mild osteoarthritis." *Id.* at 23-24. At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id* at 24. The ALJ considered Listing 1.02 (Major

---

[4] This appeal is from the Commissioner's final decision of June 30, 2015, denying Plaintiff's request for review of the ALJ's 2014 Decision, which was entered pursuant to a previous remand by the Appeals Council. Therefore, this Court will limit its review to the 2014 Decision, and will discuss the ALJ's 2012 Decision only when a contrast between the two decisions is helpful to the Court's analysis.

[5] "Tendinosis is a degeneration of the tendon's collagen in response to chronic overuse; when overuse is continued without giving the tendon time to heal and rest, such as with repetitive strain injury, tendinosis results. Even tiny movements, such as clicking a mouse, can cause tendinosis, when done repeatedly." https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3312643/ (site last visited November 4, 2016). "Tendinitis," on the other hand, is inflammation of a tendon from an acute overload. Tendinosis does not involve inflammation, and anti-inflammatory treatments used to treat tendinitis may exacerbate tendinosis by inhibiting collagen repair. *Id*.

Dysfunction of a Joint), and mental Listings 12.02 (Organic Mental Disorders); 12.03 (Schizophrenic, Paranoid and Other Psychotic Disorders); 12.06 (Anxiety Related Disorders); and 12.08 (Personality Disorders). *Id*. In reaching her determination regarding mental listed impairments, the ALJ found that Plaintiff has mild restriction of his activities of daily living; moderate difficulty with social functioning; moderate difficulty with concentration, persistence, and pace; and has had no episodes of decompensation of extended duration. *Id.* at 24-25. The ALJ therefore concluded that Plaintiff had not satisfied the Paragraph B criteria. *Id.* at 25. The ALJ then found that "the evidence fails to establish the presence of 'paragraph C' criteria," as well. *Id*. at 26.

Before step four, the ALJ determined Plaintiff's RFC, concluding that he has the functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he should not be required to walk on uneven surfaces. He is limited to frequent reaching with his right dominant arm and cannot perform any overhead reaching with his with [sic] right arm. He has no limitations with respect to his left arm. He is limited to simple, routine tasks with a reasoning level of one. He should have no interaction with the public and only occasional and superficial interactions with coworkers. He should not be required to work at a production rate pace such as with an assembly type job or anything on a conveyor line.

*Id*.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. *Id*. at 34. The ALJ based this conclusion on her finding that Plaintiff's past jobs had been medium work, both skilled and unskilled, and heavy, skilled work, which he could not perform with his current RFC. *Id*. Based on that determination, the ALJ proceeded to step five, where she relied

on VE Greiner's testimony that Plaintiff would be able to perform the requirements of representative occupations such as cleaner (housekeeping) (DOT 323.687-014),[6] which is light work, as well as nut sorter (DOT 521.687-086) and cuff folder (DOT 685.687-014), which are both sedentary work.  *Id*. at 35.  All of these jobs have "SVP" ratings of 2.[7]  *Id*.  The ALJ found that VE Greiner's testimony was consistent with the DOT information and that, although he had testified that the job availability numbers he gave for the representative jobs actually "represented an entire class of jobs and not just the specific occupation listed," she had determined that, "with such large numbers for the class, the numbers for the individual occupations would be plentiful." *Id*.  The ALJ concluded that, since jobs exist in significant numbers in the national economy that Plaintiff can perform, he is "not disabled."  *Id*.

## V.   Analysis

In his motion, Plaintiff contends that:  (1) the ALJ's finding that Plaintiff's left foot impairment did not "meet or medically equal" Listing 1.02 was erroneous (*Doc. 16* at 10-11); (2) the ALJ erroneously failed to engage in a function-by-function assessment of Plaintiff's work-related abilities in her RFC analysis (*id*. at 12-13); and (3) VE Greiner's testimony could not

---

[6] DOT stands for "Dictionary of Occupational Titles," which is available at http://www.occupationalinfo.org/ (site last visited November 9, 2016).

[7] "SVP" stands for Specific Vocational Preparation, which is a rating of the amount of time it takes "a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles (4th ed., rev. 1991), App. C(II), 1991 WL 688702. SVP level 2 jobs require "[a]nything beyond [a] short demonstration up to and including one month" of such preparation.  *Id*.  A job with an SVP rating of 1 or 2 is considered "unskilled work."  POMS-DI-25001.00-B-88, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b88 (site last visited November 9, 2016).

be relied on by the ALJ because it did not take all of Plaintiff's functional impairments into account (*id*. at 14-18). Defendant disputes these contentions and argues that: (1) the ALJ's decision, as a whole, establishes that Plaintiff's foot impairment does not satisfy Listing 1.02 (*Doc. 20* at 8-11); (2) the ALJ's RFC analysis properly expressed Plaintiff's limitations in terms of an exertional category (*id*. at 11-13); (3) although the nut sorter job exceeds Plaintiff's RFC, the other two jobs provided by the VE adequately establish that there are a sufficient number of jobs that Plaintiff can do (*id*. at 13-15). In his reply, Plaintiff states that: (1) the ALJ's Listing 1.02 determination was both conclusory and contradicted by her later findings (*Doc. 22* at 4-7); (2) the ALJ's failure to assess Plaintiff's functional abilities precludes an RFC that limited him to less than the full range of light work (*id*. at 1- 4); and (3) both other jobs offered by the VE conflict with the DOT, as well as with the ALJ's own RFC determination (*id*. at 7-10).

### A. The ALJ's Consideration of Listing 1.02

Certain impairments are considered severe enough to justify a presumption of disability in those who meet their criteria. Those impairments are set forth in an appendix of "Listed Impairments," at 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Listing 1.02 falls within "Musculoskeletal" impairments, and specifically details the criteria for "major dysfunction of a joint." At step three of the SEP, the ALJ considers whether any of the claimant's impairments "meets or medically equals" one of the listed impairments. If an impairment is found to meet or medically equal a listed impairment, it is conclusively presumed to be disabling, and there is no need for further SEP analysis. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d).

In this case, the ALJ found at step two that Plaintiff has a severe impairment of, among others, "left foot degenerative changes status post-surgery." [*Doc. 13-3* at 23-24]. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled any of the listed impairments. *Id*. at 24. Plaintiff claims that this finding is erroneous because the ALJ failed to analyze the facts of his impairments in connection with the listings. [*Doc. 16* at 11]. Specifically, Plaintiff asserts that the ALJ's conclusion that his impairments do not satisfy the criteria of Listing 1.02 is without explanation that is adequate for meaningful review. *Id*. Listing 1.02 describes "major joint dysfunction" as:

> Characterized by gross anatomical deformity (e.g., subluxation,[8] contracture,[9] bony or fibrous ankylosis,[10] instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: (A) Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or (B) Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

---

[8] "Subluxation" is a "[p]artial dislocation of a joint. A complete dislocation is a luxation." http://www.medicinenet.com/script/main/art.asp?articlekey=5581 (site last visited November 4, 2016).

[9] "A contracture develops when the normally stretchy (elastic) tissues are replaced by non[-]stretchy (inelastic) fiber-like tissue. This tissue makes it hard to stretch the area and prevents normal movement. Contractures mostly occur in the skin, the tissues underneath, and the muscles, tendons, ligaments, and joint areas. They affect range of motion and function in a certain body part. There is usually also pain." https://medlineplus.gov/ency/article/003185.htm (site last visited November 4, 2016).

[10] "Ankylosis" is: "1. stiffness or fixation of a joint by disease or surgery; [or] 2. union of separate bones or hard parts to form a single bone or part." http://www.merriam-webster.com/dictionary/ankylosis (site last visited November 4, 2016).

Plaintiff claims that his foot impairment satisfies the lower-body criteria of this Listing, including the requirement that his impairment involves an "inability to ambulate effectively." [*Doc. 16* at 10, n.2; *Doc. 22* at 6-7]. That term is defined in Listing 1.00(b)(1) as "an extreme limitation of the ability to walk; i.e., an impairment[] that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Examples of "ineffective ambulation" are provided in Listing 1.00(b)(2), and include "the inability to walk a block at a reasonable pace on rough or uneven surfaces." Regarding Listing 1.02, the ALJ stated that Plaintiff:

> [D]oes not have medical evidence of involvement of one major peripheral weight-bearing joint resulting in the inability to ambulate effectively, or involvement of one major peripheral joint in each upper extremity, resulting in ability to perform fine and gross movements effectively.[11]

[*Doc. 13-3* at 24]. This statement, which effectively conveys only the standard itself and that Plaintiff did not meet it, was made without either context or analysis from which this Court might determine its validity.

Defendant responds that the ALJ did not need to state her analysis at step three "because a reviewing court does not read an ALJ's step three determination in an isolated manner separate from the rest of the ALJ's decision." [*Doc. 20* at 9, relying on *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005)]. Defendant urges this Court to reject Plaintiff's listings claim

---

[11] Immediately after this statement, the ALJ indicates the she "considered [Plaintiff]'s osteoarthritis" but that "[d]espite the combined impairments, the medical evidence does not document listing level severity." *See* [*Doc. 13-3* at 24]. Osteoarthritis was diagnosed in both Plaintiff's shoulder, where he also has tendinosis, and in his feet. Thus, it may be that the ALJ's reference to "combined impairments" only relates to Plaintiff's shoulder impairments. As such, it is not clear that the ALJ even considered Plaintiff's foot impairment under Listing 1.02. However, regardless of whether or not the ALJ intended her discussion of Listing 1.02 to include Plaintiff's foot impairment, both of her statements regarding that Listing are boilerplate, and equally devoid of analysis.

based on *Fischer-Ross,* claiming that case allows a reviewing court to ignore an ALJ's failure to provide a rationale at step three, so long as the ALJ's subsequent step analysis "sufficiently develops the administrative record and explains the findings so as to permit meaningful review." *Id*. Defendant then attempts to supply a rationale that explains how "the objective medical evidence does not meet the criteria of Listing 1.02" in this case. *Id*. at 9-11. Defendant's reading of *Fischer-Ross* is overly broad. What *Fischer-Ross* actually held, based on *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996), was that 42 U.S.C. § 405(b)(1) *requires* an ALJ at step three to discuss the evidence and to explain why the claimant's impairment does not satisfy a listing, and that failure to do so is "error." *Fischer-Ross*, 431 F.3d at 733. However, that error may be considered "harmless" if the evidence that the ALJ did discuss allows the reviewing court to "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id*. at 733-34. Considering the specific facts of the case before it, the *Fischer-Ross* court determined that the ALJ's failure to provide a reviewable analysis at step three was "harmless error," since the ALJ's subsequent findings were detailed enough to "*conclusively negate* the possibility of any finding that Claimant is presumptively disabled under the pertinent listing." *Id*. at 735. The same simply cannot be said with respect to the ALJ's findings in the present case.

In *Fischer-Ross,* the district court had reversed the ALJ's decision solely on the basis that the step three analysis was inadequate, while also affirming the ALJ's step four and five findings, and stating that, "if on remand the ALJ provided a sufficiently explicit rejection of Claimant's disability at step three," then "benefits would stand properly denied." *Id.* at 732-33. Thus, the

district court had affirmed step four and five findings that the claimant's "RFC enabled her to perform a significant number of occupations." *Id*. at 732. Therefore, the Circuit court agreed with the Commissioner's argument that the district court's "specific findings at steps four and five preclude[d] any favorable ruling for Claimant at step three,"[12] noting that, "*where an ALJ provides detailed findings*, thoroughly reviewed and upheld by the district court, *that confirm rejection of the listings in a manner readily reviewable*, requiring reversal would extend *Clifton* beyond its own rationale." *Id*. at 734 (emphasis added).

In the case before this Court, however, there simply are no such detailed findings. Rather, the ALJ's narrative consists almost entirely of what is effectively a simple recitation of selected portions of medical records, and is largely without actual "findings." Significantly, the ALJ provided no findings -- before, during, or after step three -- that "conclusively negate the possibility of any finding" that Plaintiff's foot impairment meets the Listing 1.02 criteria. The ALJ's narrative with respect to Plaintiff's RFC begins with a recitation of Plaintiff's disabilities that fails even to include his foot impairment. [*Doc. 13-3* at 27]. Despite that omission, the immediately-following discussion consists of a chronology of Plaintiff's foot injuries and treatments. However, the narrative is nearly devoid of actual analysis, and simply ends with a statement that the ALJ had "limited [Plaintiff] from walking on uneven surfaces due to his foot

---

[12] *See Fischer-Ross*, 431 F.3d at 733. Significantly, the claimant/appellee in *Fischer-Ross* did not respond to the substance of the Commissioner's argument on appeal that remand for step three findings would be "an unwarranted formality." *Id*. Instead, claimant insisted that *Clifton* "requires reversal whenever an ALJ's discussion of the evidence in reference to the step three listings is insufficiently detailed." *Id*. Not surprisingly, the Tenth Circuit agreed with the Commissioner that such a reading of *Clifton* would "expand [its] holding into a per se rule that leads to purely formalistic remands unjustifiably prolonging administrative proceedings" (*id*.), and concluded that any error committed by the ALJ at step three was "harmless" (*id*. at 735).

pain and history of foot surgery." *Id*. at 27-28. No explanation is given for how such a limitation would render Plaintiff's foot issues non-disabling and, without a discussion that ties it to Plaintiff's specific impairment, the limitation appears to have been chosen at random.[13]

The ALJ's inclusion of what appear to be largely irrelevant and prejudicial fact statements in her RFC analysis suggests that she considered Plaintiff to be not credible. Thus, the ALJ revealed that: (1) Plaintiff went to jail due to a positive opiate test because he failed to provide his probation officer with his prescriptions; (2) some of his medical providers appeared to be uncomfortable prescribing opioid pain medications for him; (3) the administrative record does not contain any documentation of either foot surgery or post-operative care; and (4) in June 2012, "he reported that his arms and legs felt better and that he had been working out." *Id*. at 28 (citing *Doc*. *13-21* at 39, 57, 60, and 64). Unfortunately, the ALJ largely ignored the medical evidence of significant structural irregularities in Plaintiff's feet.

Additionally, neither the evaluating medical sources nor the ALJ herself concluded that Plaintiff had a substance addiction disorder -- severe or not. While drug-seeking behavior may indicate lack of credibility (*e.g.*, lying about pain in order to obtain drugs for illicit use), it may also indicate long-term chronic pain that has led to drug dependence. In any event, the ALJ neither provided a reason for including the drug facts in her narrative, nor explained why the absence of

---

[13] In her narrative, the ALJ discusses some statements made by Plaintiff regarding his foot issues, most of which were made at the 2012 hearing, yet none of that testimony explains how a restriction from walking on uneven surfaces would allow Plaintiff to ambulate effectively enough to perform light work. The "light" exertional designation "requires a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b) and 416.967(b). Simply not having to walk on uneven surfaces does nothing to help Plaintiff perform duties that require significant walking or standing on smooth surfaces during a workday. *See* Soc. Sec. Rep. 83-10, at *6 ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday").

surgical reports was an issue. There was no dispute regarding the fact that Plaintiff had undergone foot surgery, and the structural problems with Plaintiff's feet were identified by x-ray.[14] *See* [*Doc. 13-21* at 54]. Finally, how Plaintiff's 2012 statement that his "arms and legs felt better and that he had been working out" even relates to his foot claims was also not explained.[15] Absent an explanation for why these particular facts were included in the ALJ's discussion of Plaintiff's feet, this Court is unable to determine their relevance to either the foot issues or the uneven surface limitation. Moreover, the ALJ's inclusion in Plaintiff's RFC that he "should not be required to walk on uneven surfaces," renders the *Fischer-Ross* holding irrelevant to the present facts. Inability to walk a block on uneven surfaces is a stated example of "ineffective ambulation" for purposes of Listing 1.02. Therefore, this Court cannot determine, as did the *Fischer-Ross* court, that the ALJ's findings conclusively *negate* the possibility that Plaintiff's foot problems could satisfy the Listing 1.02 criteria.

A more relevant case to this one is *Murdock v. Astrue*, 458 F. App'x 702 (10th Cir. January 13, 2012) (unpublished). In *Murdock*, the court found that, although the ALJ had properly discussed and analyzed the evidence leading to his conclusions that the plaintiff's back condition and depression did not satisfy listing criteria, his failure to do so with respect to the plaintiff's knee condition and Listing 1.02 was error. *Id*. at 703. However, relying on *Fischer-Ross*, the

---

[14] Given that the structural changes to Plaintiff's feet are apparent from post-surgical x-rays, it seems unlikely that reports made in connection with the actual surgery on his left foot would either add to or detract from his current claims of foot pain.

[15] "Working out" could mean any of a number of things, depending on who is doing it, and may have nothing whatsoever to do with standing or walking.

16

*Murdock* court noted that such an error "does not automatically require remand. Instead we must consider whether 'confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review.'" *Id*. at 703-04 (quoting *Fischer-Ross*, 431 F.3d at 734). The *Murdock* court specified, however, that in the absence of findings that "conclusively negate the possibility that the claimant can meet a relevant listing," the case must be remanded. *Id*. at 704 (quoting *Fischer-Ross*, 431 F.3d at 735 and citing *Clifton*, 79 F.3d at 1009-10) (internal quotation marks omitted). In *Murdock*, as in the present case, the defendant asserted that the ALJ's stated RFC precluded the claimant from meeting one of the Listing 1.02 requirements, arguing that the ALJ's conclusion that plaintiff was capable of sedentary work, which has a two-hour standing or walking requirement, negated the possibility of satisfying the listing's requirement of "inability to ambulate effectively." *Id*. The court disagreed, noting that the ALJ's RFC had limited the plaintiff's exertional abilities by adding that she "may also require a walker to ambulate long distances but not to stand or ambulate for short distances (less than 100 feet)." *Id*. Noting that "in general [100 feet] is much shorter than a city block," the court determined that the inability to walk a block without a walker, as found by the ALJ, did not conclusively negate the possibility that plaintiff met Listing 1.02. *Id*. at 705. As such, the ALJ's error in "failing to discuss the evidence and the reasons why [plaintiff]'s knee condition [did] not meet Listing 1.02," was "not harmless," and the case was remanded. *Id*.

17

Here, Defendant's arguments that Plaintiff's medical record "does not include any evidence of joint space narrowing, bony destruction, or ankyloses of any joint,"[16] and that Plaintiff "has not shown that his impairment results in the inability to ambulate effectively," (*Doc. 20* at 10-11) are equally unavailing. Defendant may not supply possible reasons for the ALJ's decision. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (reviewing court erred by "supplying possible reasons" for the ALJ's decision). Such *post hoc* reasoning cannot be used to provide what the ALJ did not, since this Court must evaluate the ALJ's decision "based solely on the reasons stated in the decision." *Id*. The ALJ failed to give appropriate reasons for her decision that Plaintiff's impairments did not satisfy Listing 1.02, either at step three or thereafter. Neither this Court nor the Defendant can supply reasons for that decision now. Therefore, this matter must be reversed for additional findings.

## B. Plaintiff's Other Claims

Plaintiff also argues that the ALJ erred by assigning him an RFC that is more restrictive than the full range of light work, without performing a function-by-function analysis (*Doc. 16* at 12-13) and that the job information provided by VE Greiner conflicts with the ALJ's RFC (*id*. at 14-18). Since this Court has determined that the ALJ's error at step three of the SEP warrants

---

[16] To the contrary, May 15, 2011 weight-bearing x-rays of Plaintiff's feet showed "post-operative changes of medial ostectomy [excision of all or part of a bone] of the distal first metatarsal" in Plaintiff's left foot, as well as "[f]usion changes . . . involving the middle and proximal phalanx of the second through fourth toes. There likely has been resection [removal] of the distal aspect of the fifth metatarsal. There is diffuse osteopenia [decreased bone density]. Degenerative changes of joint narrowing are also seen within the interphalangeal joints as well as the first metatarsophalangeal joint. There is pes planus [flatfoot]." [*Doc. 13-21* at 54]. In Plaintiff's right foot, "there is hallux valgus [bunion deformity]. [F]lexion deformities are seen in the second through fifth toes. There is also pes planus. Degenerative changes are seen about the dorsal aspect of the midfoot." *Id*. These descriptions certainly appear to support a finding of "joint dysfunction." If the ALJ disagreed, she should have explained why they do not.

remand, it is not necessary to also consider Plaintiff's step four and five claims of error.  *Clifton*, 79 F.3d at 1010.   Nonetheless, as did the court in *Clifton*, this Court notes that Plaintiff appears to have raised some meritorious arguments.  *Id*.   The ALJ's RFC narrative lacks analysis of facts that would permit meaningful review, and there are legitimate issues with respect to whether one, two, or all three representative jobs could actually be performed by someone with the RFC assigned to Plaintiff.   However, these issues are likely to be affected by the proceedings on remand and, therefore, will not be evaluated here.   *See Robinson*, 366 F.3d at 1085.

## VI.   Recommended Disposition

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that ***Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum*** (*Doc. 16*) be **GRANTED** as set forth above, and the decision of the Commissioner be **REMANDED** for further proceedings consistent with this opinion.

          *Lourdes A. Martínez*
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**